# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| CURTIS KA KIM CHEUNG, | ) |
| Petitioner, | ) |
| | ) No. 12 C 9500 |
| v. | ) |
| | ) Judge John J. Tharp, Jr. |
| C.R. NICKLIN, | ) |
| Warden, Metropolitan Correctional Center, | ) |
| Respondent. | ) |

## MEMORANDUM OPINION AND ORDER

Petitioner Curtis Ka Kim Cheung is currently being held at the Metropolitan Correctional Center ("MCC") pursuant to a Certification of Extraditability and Order of Commitment entered by Magistrate Judge Sheila Finnegan on October 15, 2012 ("the Extradition Order"). The Extradition Order authorizes Cheung's extradition to Hong Kong, where he has been charged with a number of crimes in connection with an alleged investment fraud scheme. After the Extradition Order was entered, Cheung filed a *pro se* petition for habeas corpus pursuant to 28 U.S.C. § 2241 challenging the Extradition Order. The United States has deferred Cheung's extradition pending this Court's ruling on Cheung's habeas challenge to the Extradition Order.[1] For the reasons set forth below, the petition is denied.

### I. BACKGROUND

Only a brief summary of the allegations on which the Extradition Order is premised is necessary to evaluate the petitioner's arguments. Cheung is a naturalized citizen of the United States. He arrived in the United States in 1964 from China, attended high school, college and

---

[1] Mr. Cheung did not move for a stay of the Extradition Order pending this Court's review of his habeas petition.

graduate school in this country, and for about ten years prior to his arrest in this matter, was employed as a teacher in Chicago.

On March 7, 2012, the United States filed a complaint, at the request of the government of Hong Kong,[2] seeking an order to extradite Mr. Cheung to Hong Kong pursuant to a bilateral agreement between the United States and Hong Kong concerning the extradition of fugitive criminals ("the Agreement").[3] The Extradition complaint alleges that between December 1997 and October 1998, Cheung engaged in an investment fraud scheme in Hong Kong that defrauded seven investors (all of whom were pilots with Cathay Pacific Airways) of about $3.4 million. The gist of the claim is that Cheung told investors that he would invest their funds in the global futures market, from which he claimed to have achieved annual returns that averaged approximately 250 percent between 1984 and 1996. The victims of the fraud each transferred funds to a corporate account controlled by Cheung in the Bahamas (the Kwong Fai Limited account). On receipt of the funds, Kwong Fai Ltd. was supposed to have placed the funds into Cheung's private "house account" with "Prudential-Bache" or "Prudential Securities Inc.," which he told them was a privileged private account granted by brokerage firms to high net worth customers. Each of the seven victims entered into a written Investment Trust Agreement with Kwong Fai Limited and Cheung as their investment manager. None of the victims ever received any statements or other written confirmation from these brokerage firms indicating how their funds had been invested; instead, Cheung orally informed the victims that their investments were doing well and provided a number of the victims with printouts that purported to show the

---

[2] More formally, the Hong Kong Special Administrative Region of the People's Republic of China ("HKSAR").

[3] More formally, the "Agreement between the Government of the United States of America and the Government of Hong Kong for the Surrender of Fugitive Offenders," signed at Hong Kong on December 20, 1996.

positive status of their investments. In the latter half of 1998, some of the victims became concerned and asked Cheung to return their investments; Cheung then left Hong Kong in November 1998 and has not returned. None of the investors ever received any funds back from Kwong Fai or Cheung.

In June 2011, law enforcement authorities in Hong Kong obtained an arrest warrant for Cheung predicated on multiple violations of three statues: Theft (18 counts), Evasion of Liability by Deception (7 counts), and Procuring the Making of an Entry in Certain Records by Deception (3 counts). Each of these offenses carries a maximum term of ten years imprisonment under Hong Kong law. In December 2011, Hong Kong requested extradition of Mr. Cheung. The Extradition complaint was filed in March 2012 and was assigned to Magistrate Judge Finnegan. After conducting a hearing, Judge Finnegan issued the Extradition Order on October 15, 2012. Mr. Cheung filed an initial petition for writ of habeas corpus on November 28, 2012, and an amended petition on December 13, 2012. Also pending are motions to strike and quash the arrest warrant and dismiss the complaint for extradition (Dkt. 28), to obtain a record of the transcript and other records of the extradition hearing (Dkt. 36 and 37), to dismiss the extradition complaint for humanitarian reasons (Dkt. 39), to obtain discovery (Dkt. 40), to proceed *in forma pauperis* (Dkt. 41), and for appointment of a public defender (Dkt. 42 and 49). This Court, and Magistrate Judge Finnegan, have also disposed of a number of other motions Mr. Cheung has filed while his petition has been pending.[4]

---

[4] Mr. Cheung is also a defendant in a civil case in this district alleging a similar investment fraud involving a different victim. *Fanslow v. Cheung,* No. 1:11-cv-00907, N.D. Ill. (Zagel, J.). That case has been stayed due to the pending extradition proceedings.

## II. ANALYSIS

Although Cheung's amended petition purports to assert 13 grounds justifying issuance of the writ,[5] those grounds can, for the most part, be grouped into four categories. First, Grounds One, Two, and Three assert that Cheung is not guilty of the charges set forth in the Hong Kong indictment; these arguments can also be construed as arguments that there is not probable cause to believe that he committed the crimes charged. Second, in Grounds Four and Thirteen, Cheung argues that he should not be extradited for humanitarian and health reasons. In Grounds Five, Six, and Eight, he appears to claim for various reasons that he was denied effective assistance of counsel. Grounds Seven and Eleven essentially assert that Cheung should not be extradited because the crimes for which he is charged in Hong Kong are not extraditable under the Agreement because they are not "identical" to crimes in the United States, have no statutes of limitation, and are too old. The remaining grounds do not appear to have any common element and will be discussed individually.

### A. Scope and Standard of Review

Review of Cheung's asserted grounds for the writ must be informed by an understanding of the limited scope of review of extradition rulings. This is not a direct appeal; extradition rulings cannot be appealed directly and may be reviewed only by way of a petition for a writ of habeas corpus under 28 U.S.C. § 2241. *DeSilva v. DiLeonardi*, 181 F.3d 865, 870 (7th Cir. 1999); *In re Assarsson*, 635 F.2d 1237, 1240 (7th Cir.1980) (citing *Collins v. Miller*, 252 U.S. 364, 369 (1920)). As habeas corpus is "not a means for rehearing what the magistrate has decided," habeas review of an extradition ruling is limited to three issues: (1) whether the magistrate judge had jurisdiction; (2) whether the offense charged is extraditable under the

---

[5] A fourteenth ground merely purports to reserve the right to present still more grounds at some future date.

relevant treaty; and (3) whether the evidence presented established probable cause to extradite. *In re Assarsson,* 635 F.2d at 1240 (citing *Fernandez v. Phillips*, 268 U.S. 311, 312 (1925)); *see also Sacirbey v. Guccione*, 589 F.3d 52, 63 (2d Cir.2 009). In the extradition context, probable cause is defined as "evidence that would support a reasonable belief that [the petitioner] was guilty of the crime charged." *Lindstrom v. Gilkey*, No. 98 C 5191, 1999 WL 342320, at *9 (N.D. Ill. May 14, 1999) (internal citations and quotation marks omitted). A magistrate judge's finding of probable cause to support extradition will be upheld if "there is any competent evidence to support her finding." *Bovio v. United States*, 989 F.2d 255, 258 (7th Cir. 1993) (citing *Assarsson*, 635 F.2d at 1246). This limited scope of review is commensurate with the limited scope of inquiry in the extradition hearing itself. An extradition hearing is not a plenary trial at which guilt or innocence is decided; rather, it is in the nature of a preliminary examination to determine whether probable cause exists to hold the fugitive for trial in the requesting country. *Collins v. Loisel*, 259 U.S. 309, 316 (1922). *See also* 18 U.S.C. § 3184 (providing for extradition hearings).

### B. Innocence and Sufficiency of the Evidence

The first three grounds of Cheung's petition assert that he did not commit the crimes with which he has been charged. An extradition hearing, however, is not a trial, and the Magistrate Judge did not make a finding of guilt or innocence. Rather, the function of the judicial officer in an extradition hearing is to assess whether there is probable cause to believe that the detainee committed the offense(s) charged. As noted above, a finding of probable cause requires only evidence sufficient to support a reasonable belief that the petitioner is guilty. And a review of such a finding on habeas corpus is limited to assessing "whether there was ***any*** evidence" warranting the original finding. *Fernandez v. Phillips*, 268 U.S. 311, 312 (1925) (emphasis added). Thus, to the extent that he seeks release by asserting his innocence, Mr. Cheung's

5

arguments are not cognizable; it is not the role of the extradition court, or the habeas court, to determine guilt or innocence on the pending charges.

To the extent that Mr. Cheung is arguing that the evidence submitted in support of his extradition was insufficient to establish probable cause to believe that he committed the offenses charged, his argument is cognizable but plainly lacks merit. The United States submitted, on behalf of the government of Hong Kong, ample evidence to support the charges pending against Mr. Cheung.[6] That evidence included, *inter alia*, summaries of the statements provided to Hong Kong law enforcement officials by each of the seven victims of the alleged fraud, each of whom related accounts of their dealings with Cheung that are consistent with the allegations of the extradition complaint and each of which ends with the disappearance of both Mr. Cheung and the funds they invested. Another witness, Hendrik Van Keulen, an intermediary who introduced Cheung to some of the victims, provided a statement reporting that Cheung confessed to him in January 1999 that he had not invested the victims' money at Prudential or any other brokerage as he had represented he would do. Representatives of Prudential also provided statements and evidence showing that there were no sizeable transfers of money in and out of Cheung's two accounts with the bank. There is also evidence from another bank (Hang Seng Bank Limited, or "HSBL") indicating that during the period in question, there were 28 deposits, totaling more than $3.2 million, directly from Kwong Fai Limited into Cheung's personal account at HSBL. There is more, but this summary suffices to show that there was more than a sufficient basis to support Judge Finnegan's finding of probable cause. Accordingly, Grounds One, Two, and Three do not support a grant of the petition.

---

[6] The Federal Rules of Evidence do not apply to extradition proceedings. Bovio, 989 F.2d at 259 & n.3.

### C. Humanitarian and Health Issues

Cheung also argues, in Grounds Four and Thirteen, that he should not be extradited because he fears for his life if returned to Hong Kong,[7] and because he is elderly and his health is deteriorating.[8] These humanitarian concerns, however, do not provide a basis to grant a writ of habeas corpus. *See, e.g., Hoxha v. Levi*, 465 F.3d 554, 563 (3d Cir. 2006) (denying habeas request premised on fear of torture following rendition); *In re Assarsson,* 635 F.2d at 1240. Indeed, "[w]hen the Executive seeks extradition pursuant to a request from a foreign nation, the Judiciary does not inquire into the treatment or procedures the extradited citizen or alien will receive in that country." *Kiyemba v. Obama*, 561 F.3d 509, 518 (D.C. Cir. 2009). Under the traditional doctrine of "non-inquiry," such humanitarian considerations are within the purview of the executive branch and generally should not be addressed by the courts in deciding whether a petitioner is extraditable. *Hoxha*, 465 F.3d at 563. The non-inquiry principle serves interests of international comity by relegating to political actors the sensitive foreign policy judgments that are often involved in the question of whether to refuse an extradition request. *Id.* It is, therefore, "the function of the Secretary of State to determine whether extradition should be denied on humanitarian grounds." *Kiyemba,* 561 F.3d at 518. Following entry of the Extradition Order, Cheung's attorney during the extradition hearing submitted Cheung's concerns to the Secretary

---

[7] In his petition, Mr. Cheung asserts that he has been kidnapped on three prior occasions, in both the United States and Spain; the petition fails to explain these incidents or why there is reason to fear that he is more susceptible to them if extradited to Hong Kong. Cheung also expresses concern that he will be subject to persecution by Chinese authorities because he escaped from China with other refugees in 1964. He also maintains in a supplemental motion (Dkt. 39) that he will be transferred by the HKSAR authorities to "Communist China," where he will be subject to the death penalty for his crimes because his family formerly owned a bank seized during the Cultural Revolution.

[8] While this petition has been pending, Mr. Cheung filed a motion for bond predicated upon his deteriorating health. The motion was referred to Magistrate Judge Finnegan, who denied the motion following a hearing, concluding that Mr. Cheung's health issues are not severe and are being addressed by the MCC. Dkt. 63.

of State (*see* letter from S. Frankel to T. Heinemann, U.S. Dept. of State, included in the petition); it is the Secretary's prerogative to decide whether those concerns merit invocation of the Agreement's provisions relating to refusal of an extradition request based on humanitarian concerns. *See* Agreement, Article 7 ("Humanitarian Considerations," authorizing the Executive to refuse extradition "when such surrender is likely to entail exceptionally serious consequences related to age or health"). Mr. Cheung's concerns regarding his safety and health do not provide a basis for issuance of a writ of habeas corpus.

### D. Ineffective Assistance of Counsel

In Grounds Five, Six, and Eight, Mr. Cheung appears to advance claims that his attorney during the extradition hearing provided ineffective assistance of counsel.[9] The short response to these claims is that, because it is not itself a criminal proceeding, Mr. Cheung has no right to counsel in an extradition hearing. *See DeSilva*, 181 F.3d at 868-69. "Only in criminal cases, and only as an offshoot of the Sixth Amendment, does the incompetence of a privately selected lawyer undermine the validity of the decision." *Id.* at 869 (citing *Cuyler v. Sullivan*, 446 U.S. 335, 342-45 (1980)). So, even assuming, *arguendo*, that Mr. Cheung received ineffective assistance from the private attorney or attorneys he retained, those shortcomings would not provide a basis to grant a writ of habeas corpus.

---

[9] Ground Five generally asserts that the private attorney that Mr. Cheung retained did not adequately prepare for the extradition hearing and did not present evidence at the hearing on the petitioner's behalf. Ground Six appears to be a request for "a second hearing and motion to dismiss" based on unspecified ineffective assistance of counsel. Ground Eight is difficult to decipher; it asserts that unidentified "Lawyers...informed and threatened [him] not to pursue the Kidnappers [a reference to the same kidnappers who kidnapped him on three prior occasions?— *see* n.7, *supra*] because that would be obstruction of justice ..."

### E. Arguments Relating to the Offenses Charged

Read liberally, Grounds Seven and Eleven assert (albeit without explanation) that Mr. Cheung cannot be extradited on the offenses charged in Hong Kong because those crimes do not satisfy the requirements of the Agreement. So understood, this is one of the few bases on which habeas review of an extradition order is appropriate. The result, however, is the same: Mr. Cheung is not entitled to relief.

Article 2 of the Agreement provides, in relevant part, that:

> Surrender of fugitive offenders shall be granted for an offence coming within any of the following descriptions of offences in so far as it is according to the laws of both Parties punishable by imprisonment or other form of detention for more than one year, or by a more severe penalty ... (x) Obtaining property or pecuniary advantage by deception; theft; robbery; burglary, housebreaking, or similar offences; unlawful handling or receiving of property; false accounting; embezzlement; any other offence in respect of property involving fraud ... [and] (xxxvi) Any other offence which is punishable under the laws of both Parties by imprisonment or other form of detention for more than one year, or by a more severe penalty, unless surrender for such offence is prohibited by the laws of the requested Party.

In short, under the Agreement, *any* offense that is a felony (that is, punishable by more than one year of imprisonment) under the laws of both Hong Kong and the United States and (i) involves theft or fraud (among other forms of conduct) or (ii) is not affirmatively barred as a ground for extradition under the laws of the country requested to provide extradition, is extraditable.

Plainly, this broad scope includes the offenses for which Mr. Cheung has been charged in Hong Kong, all of which carry possible sentences of up to ten years' imprisonment and all of which involve a species of theft and/or fraud. *See generally* Dkt. 31 at 3-35 and Dkt. 31-1 at 1-8. Eighteen of the 28 charges Mr. Cheung faces are alleged violations of the Hong Kong theft ordinance, Chapter 210, Section 2, which provides, in relevant part, that "[a] person commits

theft if he dishonestly appropriates property belonging to another with the intention of permanently depriving the other of it." Seven charges allege violations of Section 18B of the theft ordinance, which reaches conduct "where a person by any deception (whether or not such deception was the sole or main inducement) . . . (b) dishonestly induces [a] creditor or any person claiming payment on behalf of [a] creditor to wait for payment . . . or to forgo payment." And the last three charges Mr. Cheung faces allege violations of Section 18D(1) of the theft ordinance, which makes it a crime to procure, "dishonestly, with a view to gain for [oneself] or another or with intent to cause loss to another, by any deception . . . the making . . . of an entry in a record of a bank." There can be no reasonable argument that these offenses are not within the ambit of Article 2 of the Agreement.

Nor can there be any dispute that the offenses with which Mr. Cheung has been charged have counterparts under federal and state criminal laws in the United States. The Government points, in the first instance, to the federal mail fraud statute, 18 U.S.C. § 1341, which, like each of the Hong Kong statutes that Mr. Cheung is accused of violating, criminalizes "any scheme or artifice to defraud or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises." As such, the mail fraud statute could substitute for all of the Hong Kong offenses with which Mr. Cheung is charged, to the extent that they involve "deception." Moreover, "theft" or "embezzlement," even without deception, constitutes a felony crime under the laws of virtually any jurisdiction within the United States.[10] *See, e.g.*, 18 U.S.C. § 661 (theft within special maritime and territorial jurisdiction of the United States; property valued in excess

---

[10] Dual criminality is based on an assessment of both federal and state law. *See Wright v. Henkel*, 190 U.S. 40, 58 (1903) (rejecting argument that the language of the treaty, "made criminal by the laws of both countries," should be interpreted as limiting its scope to federal law and eliminating consideration of state laws); *Hu Yau-Leung v. Soscia*, 649 F.2d 914, 918 (2d Cir. 1981); *In re Ortiz*, 444 F. Supp. 2d 876, 883 (N.D. Ill. 2006).

of $1,000 classified as felony);[11] 720 ILCS 5/16-1(a)(1) and (b)(4) (felony theft under Illinois law where value of property taken exceeds $500).[12]

The conduct for which Mr. Cheung has been charged, then, is chargeable as various felony offenses in both Hong Kong and the United States and therefor satisfies the requirements for extradition set forth in Article 2 of the Agreement. To the extent that Mr. Cheung argues that the offenses charged must be "identical" to offenses defined under domestic law, Article 2 imposes no such requirement. To the contrary, it states expressly that "[a]n offence shall fall within the description of offences in this Article ... (a) whether or not the laws of the Parties place the offence within the same category of offences or describe the offence by the same terminology." Agreement, Article 2(4). *See also Collins v. Loisel*, 259 U.S. 309, 312 (1922) (the requirement of dual criminality "does not require that the name by which the crime is described in the two countries be the same; nor that the scope of liability shall be coextensive, or, in other respects, the same in the two countries. It is enough if the particular act charged is criminal in both jurisdictions.").

And finally with respect to these claims, the fact that there is no limitations period applicable to the Hong Kong statutes does not provide a basis to issue the writ. The Agreement does not require that extradition occur within any limitations period. Absent such a provision, delay in seeking extradition "may be relevant to the Secretary of State's final determination as to

---

[11] In relevant part: "Whoever ... takes and carries away, with intent to steal or purloin, any personal property of another [with value greater than $1,000] shall be punished by a fine ... or imprisonment for not more than five years ..." Conduct prohibited by the statute includes the taking or conversion to one's own use of money or property of another. *See, e.g., United States v. Schneider*, 14 F.3d 876, 879 (3d Cir. 1994).

[12] Under Illinois law, "a person commits theft when he or she knowingly ... (1) Obtains or exerts unauthorized control over property of the owner"; deception or fraud is not required. *See, e.g., People v. Day*, 2011 Il App (2d) 091358 (2d Dist. Aug. 30, 2011) (noting distinction between "theft" under § 16-1(a)(1) and "theft by deception" under § 16-1(a)(2).

whether extradition may go forward," but it is not a basis on which a court may deny extradition. *Kamrin v. United States*, 725 F.2d 1225, 1227 (9th Cir. 1984). Nor does delay deny the petitioner due process under the Constitution. Insofar as the actions of the United States are at issue, due process may apply, *see Matter of Burk*, 737 F.2d 1477, 1485 (7th Cir. 1984), but responsibility for the delay in prosecuting Mr. Cheung does not lay with the United States. The conduct of the United States in this matter is only to act pursuant to treaty obligations as extraditer, not prosecutor, and as such it "implicat[es] different standards of conduct vis-à-vis a criminal accused." *Id*. at 1486. The government's facilitation of an extradition request for a prosecution that would be untimely under American law does not give rise to a due process claim against the United States even where there has been a substantial delay in prosecution by the requesting state. *See id*. at 1486-87 (rejecting due process claim based on United States agreement to extradite defendant after more than 17 year delay in consideration of prior requests pursuant to different agreements with requesting state).

And insofar as Cheung seeks to impose on the Government of Hong Kong the due process requirements of the Fifth Amendment, it suffices to say that rights to due process under American law do not extend extraterritorially. *Neely v. Henkel*, 180 U.S. 109 (1901). *See also Holmes v. Laird*, 459 F.2d 1211, 1219 (D.C. Cir.), *cert. denied*, 409 U.S. 869 (1972) (citing *Neely*):

> [A] surrender of an American citizen required by treaty for purposes of a foreign criminal proceeding is unimpaired by an absence in the foreign judicial system of safeguards in all respects equivalent to those constitutionally enjoined upon American trials.

*See also, e.g., Sahagian v. United States*, 864 F.2d 509, 513-14 (7th Cir. 1988) (requesting state's compliance with panoply of Fifth Amendment rights not a basis to challenge extradition); *Matter of Burt*, 737 F.2d at 1485 n.11.

Accordingly, the absence of any statute of limitations with respect to the Hong Kong charges does not provide Mr. Cheung a basis for release.

### F. Other Arguments

Mr. Cheung offers several other purported grounds for release that merit little discussion.

In Ground Nine, Mr. Cheung asserts that the Extradition complaint is not signed. Review of the docket, however, shows that the complaint is signed by Assistant United States Attorney Stephanie M. Zimdahl and Magistrate Judge Finnegan. R. 3.

In Grounds Seven and Ten, Mr. Cheung states that the birthdate of the individual identified in the extradition request is not his birthdate,[13] but he did not dispute his identity during the Extradition hearing at which Magistrate Judge Finnegan expressly found him to be the individual identified in the request. Further, with the exception of these two unadorned statements, the entire tenor of Mr. Cheung's petition acknowledges that he is the same Curtis Ka Kim Cheung referred to by the witnesses; the factual gist of his petition is not that the authorities have the wrong man but that he did not defraud or steal from any of the complaining witnesses in the course of managing their investments.

Finally, Cheung argues that he is entitled to bail and house arrest in lieu of incarceration at the MCC. There is, however, no right to "bail" in an extradition proceeding, *Sahagian*, 864 F.2d at 514, and denial of bail—temporary and conditional release—would not in any event constitute a basis for issuance of a writ of habeas corpus—permanent release. There may be "special circumstances" that justify bail in a habeas proceeding, and Mr. Cheung appears to assert that his declining health qualifies. As noted at the outset of this opinion, however, Magistrate Judge Finnegan has recently held a hearing on Mr. Cheung's health related claims

---

[13] According to the Extradition Order, Cheung's date of birth is May 26, 1946. His petition does not set forth the purportedly correct date.

and denied his motion for release on that basis (and she previously denied his motion for bail). Those orders were appealable—*see, e.g., Grune v. Coughlin*, 913 F.2d 41, 43-44 (2d Cir. 1990); *Cherek v. United States,* 767 F.2d 335, 337 (7th Cir. 1985)—but Mr. Cheung did not appeal them, forfeiting review. He has not shown that there are special circumstances that warrant his release pending extradition and, with the issuance of this opinion, there is no need for further delay with respect to action by the Secretary of State with regard to the extradition request.

*   *   *

For the reasons set forth above, the petition for habeas corpus is denied.[14]

Entered: December 10, 2013

_____<br>
John J. Tharp, Jr.<br>
United States District Judge

---

[14] No Certificate of Appealability is required because "such certificates are not required in habeas corpus cases brought solely under 28 U.S.C. § 2241." *Lindstrom v. Graber*, 203 F.3d 470, 473 (7th Cir. 2000).